UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| REBECCA LYNN TURNER, Administrator for the Estate of CONNIE SUE WOMACK STEVER, <br><br> Plaintiff, <br><br> v. <br><br> SYFAN LOGISTICS, INC. <br><br> Defendant. | ) ) ) ) ) ) ) Case No.: 5-15-cv-00081-MFU ) ) ) ) ) |

**DEFENDANT SYFAN LOGISTICS, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION
UNDER FED. R. CIV. P. 12(b)(2) *FORUM NON CONVENIENS* AND
FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6).**

COMES NOW, the Defendant Syfan Logistics, Inc. ("Syfan"), by and through Counsel and for its Memorandum in Support of its Motion to Dismiss Plaintiff Rebecca Lynn Turner, Administrator for the Estate of Connie Sue Womack Stever's ("Plaintiff") Complaint for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), *Forum Non Conveniens* and for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) states as follows:

**I. SUMMARY OF FACTS**

This case arises out of a traffic collision between a tractor trailer being operated by DD Logistics, Inc., ("DDL") an Illinois corporation, and the decedent Ms. Connie Sue Womack Stever, a resident of West, Virginia. See the Plaintiff's Complaint attached hereto as Appendix A. This traffic collision occurred in November 2014. *Id*. On January 21, 2015 the Plaintiff, Ms. Rebecca Lynn Turner, in her capacity as the Administrator for the Estate of Ms. Stever, filed a lawsuit for wrongful death in the Circuit Court for Rockingham County, Virginia against DDL and its driver Mr. James H. Patterson. See the compromise settlement order attached hereto a as Appendix B. In that lawsuit, the Plaintiff alleged negligence against Mr. Patterson and DDL as well as negligent entrustment and negligent hiring against

DDL. See the Complaint filed by the Plaintiff against DDL and Patterson attached hereto as Appendix C. Syfan was not made a party to that lawsuit. *Id*. The lawsuit filed against DDL and Mr. Patterson was concluded with a settlement approved by the Rockingham Circuit Court on October 7, 2015. See Appendix B. The Plaintiff then filed the instant case against Syfan on November 23, 2015. See Appendix A.

Syfan is an interstate property broker engaged in the business of arranging for the transport of goods for hire in interstate commerce pursuant to an authority issued to it by the Federal Motor Carrier Safety Administration ("FMCSA") under docket number MC-583906. See ¶ 3 of the Affidavit of James Syfan attached hereto as Appendix D. As a property broker Syfan neither possesses or takes title to its clients goods, it merely arranges for the transportation services. See ¶ 3 Apx. D. Syfan is a Georgia corporation and its headquarters and sole office is located in Gainesville, Georgia. See ¶ 4 Apx. D. Syfan arranges for the transport of goods on behalf of its clients and does not operate any tractor trailers. See ¶ 3 & 5 Apx. D.  Syfan does not maintain an office in the Commonwealth of Virginia. See ¶ 6 Apx. D. Syfan does not have any of its sales staff or other employees in the Commonwealth of Virginia. See ¶ 6 Apx. D. Syfan does not own any real property in the Commonwealth of Virginia. See ¶ 7 Apx. D. Syfan does not maintain any bank accounts or physical assets within the Commonwealth of Virginia. See ¶ 7 Apx. D. All of Syfan's administrative staff are located at its office in Georgia. See ¶ 8 Apx. D.

Any and all documents and witnesses at Syfan that may be relevant to this matter are located in its office in Georgia. See ¶ 8 Apx. D. Syfan's customer placed its order for brokerage services from its Tennessee office to Syfan at its Georgia office. See ¶ 11 Apx. D.  The shipment at issue in this matter originated in Tennessee and its destination was in West Virginia and was transported by a motor carrier headquartered in Illinois. See ¶ 9 Apx. D.  Syfan did not control the methods, means, or details of the transportation of the shipment by DDL as all such decisions were made solely by DDL. See ¶ 12 Apx. D. At no point did Syfan direct or compel DDL to travel in or through Virginia. See ¶ 12 Apx. D.  Syfan and DDL do not share operating and/or management personnel. See ¶ 12 Apx. D.

2

The Plaintiff has filed the instant action against Syfan in which it has alleged that Syfan, as a property broker, negligently hired and/or retained DDL to transport the load in question in which Ms. Stever passed away. See generally Apx. A.

## II. SUMMARY OF ARGUMENT

As this memorandum will establish, the Plaintiff has failed to even allege any facts to establish that this Honorable Court may exercise personal jurisdiction over Syfan. Syfan herein affirmatively shows to the contrary that Syfan's alleged negligent actions were not committed in or directed to the Commonwealth of Virginia and do not otherwise touch or concern the Commonwealth of Virginia. Furthermore, none of the relevant parties or documents are located within the Commonwealth of Virginia, making the Western District of Virginia a *forum non conveniens* and mandating the dismissal and/or transfer of this matter to a different forum pursuant to the Court's powers under 28 U.S.C. § 1404(a). Even if this Court would retain this matter, due to recent federal legislative developments, the Plaintiff's Complaint under a theory of negligent hiring or retention fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Syfan and Therefore Should be Dismissed Under Fed. Rule Civ. P. 12(b)(2).

This case was improperly filed in the Commonwealth of Virginia. Syfan is a citizen of Georgia as its state of incorporation and location of its headquarters. See ¶ 4 Apx. D. Syfan does not maintain sufficient contacts in Virginia in order for the Plaintiff to establish that this Court may exercise personal jurisdiction over Syfan. Accordingly, the Court should dismiss this matter or in the alternative transfer this lawsuit to a different District pursuant to its transfer powers under 28 U.S.C. § 1404(a). Syfan has identified a conforming alternative forum which is discussed in Subsection iv of Section B of this Supporting Memorandum.

**i.** *Legal Standard*.

The case law controlling when a court may exercise jurisdiction over a non-resident defendant, like Syfan, states that it is the Plaintiff that, "bears the burden of making a prima facie showing that jurisdiction is authorized by the state's long arm statute and that the exercise of personal jurisdiction would be consistent with due process under the U.S. Constitution." *Jackson v. Michalski*, 2011 U.S. Dist. LEXIS 93361, *7 (W.D. Va. 2011)(citing *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)).

In this case the Plaintiff's Complaint is defective in that it does not assert how this Court has personal jurisdiction over Syfan pursuant to Virginia's long arm statute. See ¶ 1-4 Apx. A. The Plaintiff's Complaint merely alleges that this Court has subject matter jurisdiction based upon the diversity under 28 U.S.C. § 1332. See ¶ 5 Apx. A. The Plaintiff then addresses venue under 28 U.S.C. § 1391, but does not address how personal jurisdiction is established by this Court. *Id*. Therefore, the Plaintiff has failed to meet its threshold burden with respect to establishing personal jurisdiction as articulated by this Court in *Michalski* and *Putz* and consequently this matter should be dismissed and/or transferred upon these grounds alone. However, Syfan will continue in the personal jurisdiction analysis to demonstrate that this Court does not have grounds to establish personal jurisdiction over Syfan.

The first step of the personal jurisdiction analysis reviews whether this Court may exercise jurisdiction over Syfan under the Virginia long arm statute codified at Va. Code § 8.01-328.1(A). In addition, the Court considers if the exercise of such jurisdiction is consistent with the due process clause of the Fourteenth Amendment to the Constitution of the United States. *Id*. at *8-9; see also *Putz v. Golden*, 2009 U.S. Dist. LEXIS 121556, *13-14 (W.D. Va. Dec. 31, 2009). However, the Fourth Circuit has ruled that Virginia's long arm statute has extended personal jurisdiction to the allowable extent under the Fourteenth Amendment's due process clause and essentially this two-step analysis has merged into one. See *Michalski*, 2011 U.S. Dist. LEXIS at *9 (citing *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-36 (4th Cir. 1996)); see also *Putz*, 2009 U.S. Dist. at * 14 (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (2009)). The due process clause requires that the defendant, "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "'traditional notions of fair

play and substantial justice.'" *Michalski*, 2011 U.S. Dist. LEXIS at *9 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S., 316 (1945)).

There are two types of personal jurisdiction: general and specific. *Michalski*, 2011 U.S. Dist. * 9 (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). To constitute general personal jurisdiction it must be shown that the defendant has, "'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *Michalski*, 2011 U.S. Dist. at * 9 (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009)). In other words, the defendant must have "continuous and systematic" affiliations with the State "as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (U.S. 2011).

Specific personal jurisdiction is established if the defendant's contacts with the forum state create the jurisdiction, but the defendant's contacts must be, "directed at the forum state in more than a random, fortuitous, or attenuated way." *Michalski*, 2011 U.S. Dist. at * 10 (citing *ESAB Group, Inc. v. Centricut, Inc.* 126 F.3d 617, 625 (4th Cir. 1997)). The 4th Circuit has amplified the specific personal jurisdiction test by enumerating the following three factor analysis, which asks the Court to consider:

> "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Michalski*, 2011 U.S. Dist at * 10-11 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

Further, as the 4th Circuit has noted, "although the place the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280-81 (4th Cir. 2009). Here, the Plaintiff cannot establish either general or specific jurisdiction over Syfan.

**ii.** *General Personal Jurisdiction*.

The Plaintiff has a high burden to meet the general personal jurisdiction test. As this Court in *Michalski* noted, "[t]he level of contacts needed to confer general jurisdiction is 'significantly higher than

5

for specific jurisdiction'". *Michalski*, 2011 U.S. Dist at * 23 (quoting *ESAB Group, Inc. v. Centricut*, Inc. 126 F.3d 617, 623 (4th Cir. 1997)).

In the instant case, not only has the Plaintiff failed to plead how this Court may exercise personal jurisdiction over Syfan, but Syfan does not have the required level of contacts with the Commonwealth of Virginia for this Court to exercise personal jurisdiction.

As enumerated in Title I of this Supporting Memorandum Syfan is a Georgia corporation that maintains its sole office in Georgia. See ¶ 4 Apx. D. Syfan is an interstate property broker and therefore arranges for the shipment of goods on behalf of its clients by motor carrier, but it does not operate any tractor trailers nor manufacture any goods that are shipped to Virginia. See ¶ 3 & 5 Apx. D. Syfan does not maintain an office in the Commonwealth of Virginia, it does not own real property in Virginia and does not maintain any assets or bank accounts in Virginia. See ¶ 6 & 7 Apx. D. Syfan does not have any sales staff in Virginia. See ¶ 6 Apx. D.  Based on these facts it cannot be said that Syfan's contact with Virginia is "continuous or systematic" to establish general personal jurisdiction under the doctrine outlined by this Court in *Michalski* and *Putz*.   Stated differently, Plaintiff has plead nothing that indicates that Syfan has continuous and systematic affiliations with Virginia so as to render it essentially "at home" in Virginia.  *See*, *Goodyear* at 131 S. Ct. at 2851.

In *Michalski* the Western District of Virginia offered the following summary of the 4th Circuit decision of *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) which illustrates the significant contacts a Defendant must have to create general personal jurisdiction:

> "In *Nichols*, the Fourth Circuit held that general jurisdiction over a company in Maryland could not be shown even where that company employed thirteen Maryland residents as sales representatives and one Maryland resident as a district manager; kept automobiles, samples and promotional materials in Maryland; had a one-time contract with a Maryland firm for drug research; held two regional and national meetings for district managers in the state; and had between nine million and thirteen million in annual sales in Maryland." *Michalski*, 2011 U.S. Dist at * 27 (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199-1200 (4th Cir. 1993)).

In its finding in *Nichols* the Fourth Circuit noted that changes in the doctrine of specific jurisdiction had made general jurisdiction obsolete and that, "broad constructions of general jurisdiction should generally be disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). The 4th Circuit

decided that the above referenced facts were not enough for the Plaintiffs to sustain jurisdiction in Maryland for injury allegedly caused by the Defendant's medical devices. *Nichols*, 991 F.2d at 1198, 1200. Like the defendant in *Nichols* there is no arguable claim that general personal jurisdiction can be asserted over Syfan by this Honorable Court.  In other words, Syfan is not "at home" as the Supreme Court has stated thereby precluding the exercise of general jurisdiction here.  *See*, *Goodyear* at 131 S. Ct. at 2851.

      **iii.** *Specific Personal Jurisdiction*.

The Plaintiff cannot establish that this Court may exercise specific personal jurisdiction over Syfan. The first prong of the *Geometric Ltd.* test ("contacts reflect purposeful availment") clearly indicates that exercising jurisdiction over Syfan would be improper. See *Geometric Ltd.*, 561 F.3d at 278. Syfan has shown through its conduct that it has not "purposefully availed itself of the privilege of conducting" regular business within the Commonwealth of Virginia. *Id*.  As previously stated, Syfan does not have offices, real property or other property like bank accounts in Virginia. See ¶ 6-8 Apx. D. It does not maintain a Virginia sales staff. See ¶ 6 Apx. D. It is not shipping goods it owns into Virginia. See ¶ 3 & 5 Apx. D. There are simply no grounds to assert that Syfan maintains an active presence in Virginia. See *Geometric Ltd.*, 561 F.3d at 278.  Indeed, the overwhelming majority of the factors weigh against finding that Syfan purposefully availed itself of conducting activities in Virginia.  As a result of the absence of the necessary prong one here, the Court need not even address prongs two and three of the inquiry.

Assuming for the sake of argument the Court were to disagree, however, with respect to prong two of the *Geometric Ltd.* test ("contacts form basis of suit") the Plaintiff's claim does not arise from activities that Syfan performed in or directed to Virginia. *Id*.  The shipment in question on the day of the collision referenced in the Plaintiff's Complaint was being transported from Tennessee to West Virginia by an Illinois motor carrier. See ¶ 9 Apx. D. Syfan's customer in the shipment at issue is a Delaware corporation with its headquarters in Colorado. *Id*.  Syfan's customer contacted Syfan from Tennessee to place the order for the shipment. See ¶ 11 Apx. D  No choice of law provision selecting Virginia law to

govern disputes is alleged. See generally Apx. A. No in-person contact with any resident of Virginia regarding the subject shipment is alleged. *Id*. No communications between the parties has been alleged to have occurred in Virginia. *Id*. Therefore, there is nothing relating to Virginia apart from the location of the collision referenced in the Complaint. See generally Apx. A. The Plaintiff elected to separate its claim. The Plaintiff filed an initial lawsuit in Virginia where it sued the motor carrier DDL and its driver only. See generally Apx. C. The case before the Court concerns allegations by the Plaintiff that Syfan negligently retained DDL, which is at best only tangentially related to the occurrence of the collision. Any decisions Syfan made regarding the retention of DDL do not touch or concern the Commonwealth of Virginia. Syfan is a Georgia corporation and its headquarters is in Georgia. See ¶ 4 Apx. D. Any decisions made regarding the retention of motor carriers are made in Georgia, not Virginia. See ¶ 10 Apx. D. Any and all agreements entered into between Syfan and DDL were created either in Illinois or Georgia not Virginia. See ¶ 10 Apx. D. No performance of the subject brokerage services by Syfan were performed in Virginia. See ¶ 10-12 Apx. D. Syfan did not control the methods, means, or details of the transportation of the shipment by DDL. See ¶ 12 Apx. D. Further, at no point did Syfan direct or compel DDL to travel in or through Virginia. See ¶ 12 Apx. D. Syfan and DDL do not share operating and/or management personnel. See ¶ 12 Apx. D. Accordingly, the Plaintiff has failed to plead and cannot otherwise prove any contact that Syfan itself performed in or directed to Virginia sufficient to satisfy prong two.

Lastly, with respect to prong three of the *Geometric Ltd.* test ("constitutionally reasonability") Virginia is clearly not the appropriate forum for the Plaintiff's claim. *Geometric Ltd.*, 561 F.3d at 278. Syfan will be unfairly burdened in litigating as all the sources of proof regarding this matter and relevant witnesses are located in Georgia. See ¶ 8 Apx. D. Any interest Virginia may have in the dispute is undermined by the fact that neither the Defendant nor Ms. Stever were residents of Virginia at the time of the traffic collision. See ¶ 2 Apx. A; ¶ 4 Apx. D. Accordingly, it would be constitutionally unreasonable for Virginia to exercise personal jurisdiction here over Syfan.

The Plaintiff's Complaint fails to state any facts whatsoever to establish personal jurisdiction in Virginia and this omission is telling, because there is no basis for the Western District of Virginia to assert personal jurisdiction over Syfan under the general and specific personal jurisdictional tests. *See*, *e.g.*, *Carroll v. Vinnell Arabia, LLC*, 2015 U.S. Dist. LEXIS 127207 (E.D. Va. 2015) (dismissing complaint for lack of personal jurisdiction)). Syfan simply is not "at home" in Virginia to permit it to be sued in Virginia for purposes of general jurisdiction. And the nature of Syfan's alleged conduct in this action – as it is plead by the Plaintiff – did not occur in and was not otherwise directed to Virginia, and do not sufficiently touch or concern Virginia for purposes of specific jurisdiction. Further, it would not be constitutionally reasonable for this Court to assert personal jurisdiction over Syfan and this case should be dismissed and/or transferred.

**B. Syfan Moves for a Change of Venue Pursuant to 28 U.S.C. § 1404(a) in that this District is a *Forum Non Conveniens*.**

The Plaintiff has alleged that Syfan negligently retained DDL to provide transportation services on behalf of Syfan's customer. See Apx. A. Plaintiff's allegations relate to decisions that Syfan made in Georgia at its corporate office and do not touch or concern the Commonwealth of Virginia. The sources of proof relating to Syfan's defenses and witnesses on its behalf are located at its headquarters which is the territory of the U.S. District Court for the Northern District of Georgia. See ¶ 4 & 10 Apx. D. Since Plaintiff's allegations focus on actions that Syfan may or may not have taken and all pertinent information and witnesses are located in Georgia, this District is a *forum non conveniens* and pursuant to 28 U.S.C. § 1404(a) this matter should be transferred to the Northern District of Georgia.

**i.** *Legal Standard*.

28 U.S.C. § 1404(a) states that:

> "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The instant case was filed pursuant to diversity jurisdiction under 28 U.S.C. § 1332. See ¶ 4 Apx. A. As the Plaintiff stated in her Complaint the decedent, Ms. Stever, was a citizen of the State of West Virginia

9

at the time of her death. See ¶ 2 Apx. A. Syfan was organized under the laws of the State of Georgia and maintains its headquarters and/or is domiciled in the State of Georgia. See ¶ 4 Apx. D. Syfan's corporate headquarters is located within the U.S. District Court for the Northern District of Georgia. Based on these facts jurisdiction would not be defeated if this matter was transferred to the Northern District of Georgia. Therefore, the Northern District of Georgia is a viable, and for a number of reasons, a superior, forum for the litigation of this dispute and pursuant to 28 U.S.C. § 1404(a) this Honorable Court has the authority to effectuate such a transfer.

In the case of *Nofsinger v. Va. Commonwealth Unvi.*, this Court noted the Supreme Court precedent that mandates the same analysis used to determine whether a case should be dismissed under the doctrine of *forum non conveniens* is used to weigh transfers under 28. U.S.C. § 1404(a). *Nofsinger v. Va. Commonwealth Univ.*, 2012 U.S. Dist. LEXIS 42292, *5 (W.D. Va. 2012)(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)(see also *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 (W.D. Va. 2005)).

The Supreme Court has stated that the, "central focus of the *forum non conveniens* inquiry is <u>convenience</u> (emphasis added)". *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 2010 U.S. Dist. LEXIS 70191, *7 (W.D. Va. July 13, 2010)(quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981). For reasons discussed below, in this matter convenience mandates the transfer of this lawsuit to the Northern District of Georgia.

The first question the deciding court must address under the *forum non conveniens* analysis is if there exists an alternative forum where the dispute can be heard. See *Arthrex*, 2010 U.S. Dist. LEXIS at *7. As previously stated, this matter could be heard in the Northern District of Georgia without defeating jurisdiction. Therefore, the Northern District of Georgia is a viable alternative forum.

The *forum non conveniens* inquiry turns to weighing if private and public interest factors favor transfer. *Id*. at *8. Both the private and public interest factor prongs contain a number of sub-factors. The private interest sub-factors are: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses;

and (3) all other practice problems that make trial of the case easy, expeditious and inexpensive". See *Arthrex*, 2010 U.S. Dist. LEXIS 70191 at * 8-9 (quoting *Gilbert*, 330 U.S. at 580)(also quoting *Galustian v. Peter*, 591 F.3d 724, 732 n.7 (4th Cir. 2010)). The public interest sub-factors are: "(1) administrative difficulties [which] follow for courts when litigation is piled up in congested centers instead of being handled at its origin; (2) jury duty is a burden that not ought be imposed upon people of a community which has no relation to the litigation; (3) the local interest in having localized controversies decided at home…(4) the interest in trying cases where the substantive law applies." See *Arthrex*, 2010 U.S. Dist. LEXIS at * 8-9 (quoting *Gilbert*, 330 U.S. at 580)(also citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)).

### ii. *General Discussion*.

The Plaintiff has elected to bifurcate the litigation regarding the 2014 traffic collision, by bringing an action against the driver Mr. Patterson and DDL, then later commencing this action against Syfan. See Apx. A & C. The focus of the Complaint is on decisions Syfan made that the Plaintiff alleges somehow caused the collision. See generally Apx. A. However, the focus should be on decisions and actions that Syfan may have or may not have made and information that Syfan may have or may not have possessed prior to retaining DDL rather than the actual collision itself. DDL's and Mr. Patterson's liability for the collision has already been established and the Plaintiff has already recovered. See Apx. B. The Plaintiff's Complaint establishes that the collision itself is not the focus of this litigation, which greatly lessens the relevance of maintaining this litigation where the collision occurred. The Plaintiff has elected to focus this lawsuit solely on Syfan and therefore the analysis of whether this District is a *forum non conveniens* should center on the convenience of Syfan, in defending itself in this District apart from the Northern District of Georgia.

### iii. *Private Interest*.

The private interest factors strongly support transferring this lawsuit to the Northern District of Georgia. As the Supreme Court stated in *Reyno* the, "central focus of the *forum non conveniens* inquiry is convenience". *Reyno*, 454 U.S. at 248 (1981). The Western District of Virginia is an inconvenient forum

11

for Syfan. The sources of proof, which in this case will be Syfan's employees and documents, are solely located in Gainesville, Georgia. See ¶ 8 Apx. D. If this case continues in the Western District of Virginia either Syfan's employees will have to travel to Charlottesville or both Plaintiff and Defense Counsel will have to travel to Georgia to take the depositions of Syfan's employees. Either way extensive travel for a number of parties will be involved if this case remains with this Court, whereas if this matter was transferred to Georgia only Plaintiff's Counsel would presumably have to travel for depositions.

If this litigation will require the involvement of third parties, the subpoena powers of the Northern District of Georgia will be sufficient to compel the attendance of all domestically based third parties. This may include employees of DDL which are located in Illinois. See ¶ 9 Apx. D. Gainesville, Georgia is much easier for out-of-state third parties to cost effectively travel to than Charlottesville, Virginia.

Gainesville, Georgia, where Syfan maintains its headquarters, is approximately fifty-four miles North East of Atlanta, Georgia. See ¶ 4 Apx. D. The Northern District of Georgia maintains a division in Gainesville. Therefore, Syfan's headquarters and the trial court would not be located far apart. In addition, Gainesville's proximity to Atlanta would decrease the cost of the attendance of out-of-state third parties at depositions or trial since Atlanta, Georgia possesses a large international airport which serves a number of domestic airlines with multiple flights to major domestic cities per day. Syfan's Georgia based Counsel would be prepared to assume the defense of this matter, saving legal fees for the defense that would be spent on travel if this action remains in Virginia. See ¶ 13 Apx. D.

The Plaintiff could have added Syfan to its initial lawsuit. In that case the private interest factors of transferring this case would have been decreased due to considerations of discovery relating to the liability investigation. In the instant case, there are no witnesses to the collision to be interviewed or police officers to be called. As the Plaintiff's Complaint indicates, this is a lawsuit about Syfan's retention of DDL and therefore there is little compelling reason to maintain this litigation at the site of the collision when the sources of proof and Syfan's witnesses are located in Georgia. The private interest factors indicate that it would be less expensive and expeditious to transfer this lawsuit to the Northern District of Georgia.

### iv. *Public Interest*.

The public interest factors also support transferring this case to the Northern District of Georgia. As previously stated in this section, this is a case that focuses on Syfan and its actions in retaining DDL. The origin of the Plaintiff's allegations rests in decisions made at Syfan's headquarters which has no relation to Virginia. There is no reason that the Western District of Virginia should bear the expense and burden of the trial of this matter. There is no reason why the potential jurors of the Western District of Virginia should be empanelled to hear a matter when the activities alleged in the Complaint did not occur within the Commonwealth of Virginia, but in Georgia.

There is no difference in the substantive law that would decide this dispute. Georgia recognizes the tort of negligent hiring/retention/entrustment. See *Ga. Messenger Serv. v. Bradley*, 690 S.E.2d 888, 891 (Ga. Ct. App. 2010); *Western Indus., Inc. v. Poole*, 634 S.E.2d 118, 121-22 (Ga. Ct. App. 2006); see generally *Zaldivar v. Prickett*, 774 S.E.2d 688, 698 (Ga. 2015)(citing *CGL Facility Mgmt. v. Wiley*, 328 Ga. App. 727, 731 (2014)); *Dougherty Equip. Co. v. Roper*, 757 S.E.2d 885, 890 (Ga. Ct. App. 2014)(citing *Gill Plumbing Co., Inc. v. Macon*, 187 Ga. App. 481, 482-483(1998).

Finally the Court in *Arthrex*, quoting the Supreme Court in *Gilbert*, stated that there is an interest in, "having localized controversies decided at home". See *Arthrex*, 2010 U.S. Dist. LEXIS 70191 at * 8-9 (quoting *Gilbert*, 330 U.S. at 580)(also citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)). The locus of this controversy is Georgia. The Plaintiff is suing Syfan, alone, after filing and concluding a lawsuit focused on the facts of the collision, for decisions Syfan made or may not have made. These decisions occurred at its headquarters in Georgia, where the witnesses and the sources of proof are exclusively located. See ¶ 8 Apx. D. Therefore, a jury in Georgia should be the ones that judge Syfan's actions, not one in Virginia.

It is in the public interest that this case be transferred to the Northern District of Georgia. After the settlement of the initial lawsuit this is now a controversy with its locus in Georgia. Pursuant to the

factors this Court enumerated in *Arthrex* the trial should be held in Georgia. There is no compelling reason why this matter should be heard by the Western District of Virginia or consume its judicial resources and the Plaintiff will be able to pursue its cause of action in Georgia the same as it would in Virginia.

**C. <u>The Plaintiff's Complaint Should be Dismissed because it Fails to State a Claim Upon Which Relief can be Granted Under Fed. R. Civ. P. 12(b)(6)</u>.**

The basic underlying premise alleged in Plaintiff's Complaint is that Syfan is liable for negligently hiring/retaining DDL is fundamentally flawed. Plaintiff contends that Syfan should have based its decision to retain DDL upon statistics or symbols that were on the Federal Motor Carrier Safety Administration's ("FMCSA") Compliance Safety Accountability ("CSA") website.  But this whole process of statistics, symbols and safety ratings has now been found flawed and the entire safety rating process which Plaintiff relies upon exclusively has been totally eviscerated as a result of recently passed federal legislation.  Less than two (2) weeks ago, in what could only be considered  one of the most revolutionary  pieces of  legislation in the history of Federal regulation of the trucking industry,  agreed to and advanced by the FMCSA itself,  Congress ordered that :

> "On and after the date that is 1 day after the date of enactment of this Act, no information regarding analysis of violations, crashes in which a determination is made that the motor carrier or the commercial motor vehicle driver is not at fault, alerts, or the relative percentile for each BASIC developed under the CSA program may be made available to the general public . . . ." Surface Transportation Reauthorization and Reform Act of 2015, Pub. L. No. 114-94; H.R. 22-230, 114th Congress, § 5223(a) (2015). The relevant sections of this Public Law are attached hereto as Appendix E.

Without reliance on this faulty data the Plaintiff's Complaint fails completely to make a prima facie case for negligent hiring / entrustment and the case should be dismissed under Fed. R. Civ. P. 12(b)(6).  No other allegations are advanced for any alternate basis for the Plaintiff's claim of negligent hiring/entrustment.

    **i.** *Legal Standard Motion to Dismiss Under Fed R. Civ. P. 12(b)(6)*.

A Rule 12(b)(6) motion asks the court to test, "the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim". *Michalski*, 2011 U.S. Dist at * 12. When considering

such a motion the court should, "accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff". *Id*. (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, the Plaintiff has to plead facts that go beyond speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level")). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Michalski*, 2011 U.S. Dist at * 13 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

      **ii.** *Legal Standard for Negligent Retention in Virginia*.

The Virginia Supreme Court articulated the following standard for pleading negligent retention of an independent contractor, "liability for physical harm to third persons caused by his [its] failure to exercise reasonable care to employ a competent and careful contractor…to do work which will involve a risk of physical harm unless it is skillfully and carefully done." *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 399 (Va. 1988)(citing Restatement (Second) of Torts § 411 (1965)).

      **iii.** *Analysis*

In its Complaint the Plaintiff alleges that at the time of the shipment at issue Syfan should have been aware that DDL displayed, "a flagrant, willful and prolonged disregard for the FMCSA regulations". See ¶ 8 Apx. A. The Plaintiff claims that in October 2014 Syfan should have been aware that based on information published on the FMCSA's CSA website DDL "ranked in the bottom 4th percentile for driving safety, and the bottom 10th percentile for hours of service compliance; that in Syfan should have been aware in November 2014 DDL, "ranked in the bottom 4th percentile for driving safety, and the bottom 10th percentile for hours of service compliance". See ¶ 8(e)(f) Apx. A. The Plaintiff's Complaint alleges that prior to the date of the collision referenced in the Complaint the FMCSA's websites had flagged DDL as an unsafe motor carrier with yellow caution signs. See ¶ 9 Apx. A. The Complaint further claims that Syfan did not take reasonable steps to uncover DDL's safety operational record. See ¶ 28 Apx. A. All the assertions the Plaintiff enumerates in the "General Allegations" section of its Complaint regarding DDL's ranking and the alleged FMCSA warning are incorporated into the single negligent hiring and retention count asserted against Syfan. See ¶ 30 Apx. A. In its negligent hiring and retention

claim the Plaintiff alleges that Syfan failed to exercise reasonable care when selecting DDL due to the alleged availability and accuracy of the FMCSA's information. See ¶ 31 Apx. A. Further Plaintiff contends that based upon data provided by the Federal Motor Carrier Safety Administration ("FMCSA") DDL and its driver Mr. Paterson were "unskilled to perform the job for which they had been hired by Syfan". See ¶ 33 Apx. A. Finally, Plaintiff further alleges that Syfan "should have known" of DDL's and Mr. Patterson's alleged "incompetence and lack of skill." See ¶ 34 Apx. A.

The entirety of the Plaintiff's claim is based upon the purported accuracy of information regarding DDL's operations allegedly being available on the FMCSA's CSA website prior to tender of the subject shipment. See ¶ 8 & 9 Apx. A. Simply put Plaintiff's Complaint should be dismissed because reliance upon this data and/or symbols has been determined to be flawed given that overnight all such data was immediately removed from the FMCSA website relating to each and every motor carrier operating in the United States.

Since the CSA was publically published by the FMCSA on its website there have been numerous complaints expressed throughout the transportation industry regarding the accuracy of its data, reported in the CSA website's Behavior Analysis and Safety Improvement Categories, better known as "BASIC" Scores. In November 2010 three transportation trade associations, National Association of Small Trucking Companies, The Expedite Alliance of North America, and the Air & Expedited Motor Carriers Association, sued the FMCSA regarding the implementation of its CSA website and the publication of motor carrier's BASIC scores on said website. *National Association of Small Trucking Companies, et al. v. FMCSA*, (D.C. Cir. No. 10-1402); see also FMCSA News Release attached hereto as Appendix F. This lawsuit was settled and as a result of the settlement the FMCSA issued a news release which it published on its website. This news release contained disclaimer that was integrated into the CSA website which stated as follows regarding the yellow triangle symbols referenced in the Plaintiff's Complaint:

"The key changes that FMCSA will make to the SMS public website by March 25, 2011 are as follows:

> Replace any ALERT symbol currently displayed in orange on the SMS [Safety Measurement System ]website with the following symbol of the exclamation mark inside a gold triangle ⚠.
>
> Revise the disclaimer language on the SMS website to read:
>
> The data in the Safety Measurement System (SMS) is performance data used by the Agency and enforcement community. A ⚠ symbol, based on that data, indicates the FMCSA may prioritize a motor carrier for further monitoring. The ⚠ symbol is not intended to imply any federal safety rating of the carrier pursuant to 49 USC 31144. Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier in the SMS has received an UNSATISFACTORY safety rating pursuant to 49 CFR Part 385, or has otherwise been ordered to discontinue operations by the FMCSA, it is authorized to operate on the nation's roadways." See Appendix F.

Here, DDL, never received an "unsatisfactory" safety fitness rating, was never "ordered to discontinue operations" by the FMCSA. And indeed Plaintiff does not allege otherwise. See generally Apx. A.

On December 4, 2015 President Obama executed Public Law 114-94 titled "Fixing America's Surface Transportation Act" also known as the "FAST Act". See the, Surface Transportation Reauthorization and Reform Act of 2015, Pub. L. No. 114-94. Section 5223 of the FAST Act mandates that the FMCSA remove the BASIC information from public view on its website. See FAST Act, Pub. L. No. 114-94 Title V, Part II, Sec. 5223. The FAST Act confirms that the FMCSA's CSA website BASIC Scores and data reports are flawed and unreliable. Therefore, knowledge of flawed and unreliable data as to a motor carrier fitness to operate in interstate commerce as formerly reported by the FMCSA's CSA BASIC Scores and data prior to this legislation, cannot be adversely imputed to third-party property brokers like Syfan.

As the FAST Act indicates, the FMCSA's CSA BASIC data is flawed and so misleading as to be immediately removed from the FMCSA web site. Plaintiff's Complaint otherwise contains no affirmative allegations of any alternative predicate for the negligent hire. Plaintiff's entire cause of action rests of upon information allegedly available to Syfan by the FMCSA through its CSA website that the Plaintiff claims it should have known or used prior to tendering the shipment in question to DDL. See ¶ 8 & 9 Apx. A. Without this alleged "information", the Plaintiff's Complaint rests upon zero factual foundation

17

constituting nothing but mere conjecture; it should therefore be dismissed pursuant to Rule 12(b)(6).

Indeed, FAST Act in pertinent part states:

> "Unless a motor carrier has received an UNSATISFACTORY safety rating under part 385 of title 49, Code of Federal Regulations, or has otherwise been ordered to discontinue operations by the Federal Motor Carrier Safety Administration, it is authorized to operate on the Nation's roadways."

FAST Act, Pub. L. No. 114-94 Title V, Part II, Sec. 5223(d)(2) - Apx. E.

Syfan's records reflect that on the day of the collision DDL was an authorized, insured and licensed motor carrier by the FMCSA fit to operate in interstate commerce. See ¶ 14 Apx. D. On the day in question DDL possessed a valid interstate license, was not listed as unsatisfactory and had not been placed out of service by the FMCSA. See ¶ 14 Apx. D. Based on the FAST Act this information was the only reliable information as DDL's operational history. Therefore, it was not unreasonable or negligent for Syfan to tender the subject shipment to DDL, due to the fact that the FMCSA's records indicated that DDL did have the necessary "skill, experience and available equipment" to safely transport the subject shipment. See ¶ 33 Apx. A. With the removal of the FMCSA's CSA data there is no support for Plaintiff's claim for negligent entrustment. There was no unreasonable basis for the tender of the subject shipment to DDL. Therefore, the Plaintiff has failed to plead facts that would indicate that Syfan had any way of knowing that DDL posed any alleged safety risk to the public, or the Plaintiff specifically, as required by *Philip Morris, Inc. v. Emerson* and its Complaint should be dismissed for failure to state a claim upon which relief could be granted under Rule 12(b)(6).

### III. CONCLUSION

The Plaintiff's Complaint failed to plead under what means this Honorable Court may exercise personal jurisdiction over Defendant Syfan Logistics, Inc. This Court lacks personal jurisdiction over Syfan because it has established that it does not have sufficient contact with Virginia in order to meet the test of general personal jurisdiction. Further, there is no nexus between the claim asserted by the Plaintiff, the conduct of the sole defendant, Syfan, and the Commonwealth of Virginia in order to establish specific personal jurisdiction over Syfan. Further, personal jurisdiction over Syfan would further be

constitutionally unreasonable. If this case proceeds the Plaintiff's claim focuses on actions and decisions made by Syfan at its Georgia headquarters and all sources of proof and relevant witnesses are located in Georgia, not Virginia. Therefore, this lawsuit should be dismissed or in the alternative transferred pursuant to the Court's powers under 28 U.S.C. 1404(a). Finally due to the passage of the FAST Act, the FMCSA's CSA BASIC Scores and Data have been ruled to be inaccurate and unreliable. Because the Plaintiff's claim against Syfan, rests solely upon this Data, the Complaint is speculative and based on mere conjecture and should be dismissed for failing to state a claim upon which relief could be granted.

Respectfully submitted,

\_\_\_/s/ John T. Husk_____
John T. Husk, Esq. VSB No.: 32801
Jeffrey E. Cox, Esq. VSB No.: 77857
Seaton & Husk, LP
2240 Gallows Road
Vienna, VA 22182
Tel: 703-573-0700
Fax: 703-573-9786
E-mail: johnhusk@aol.com
          jeffcox@transportationlaw.net
*Counsel for Syfan Logistics, Inc.*

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of December, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing (NEF) to the following counsel record:

E. Kyle McNew, Esq.
J. Gregory Webb, Esq.
Michie Hamlett Lowry Rasmussen & Tweel, PLLC
500 Court Square, Suite 300
PO Box 298
Charlottesville, Virginia 22902
Tel: 434-951-7200
Fax: 434-951-7218
E-mail: gwebb@michiehamlett.com
          kmcnew@michiehamlett.com

_____/s/ John T. Husk_____
John T. Husk